IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-CV-00750-GCM

| | |
|---|---|
| UNITED STATES, *ex rel.* Daniel Hayes, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>CHARLOTTE MECKLENBURG HOSPITAL AUTHORITY,<br><br>Defendant. | **ORDER** |

**THESE MATTERS** come before the Court upon Non-Party Metrolina Nephrology Associates, P.A.'s Motion to Quash Plaintiff's Rule 30(b)(6) Deposition Subpoena and/or for a Protective Order (Doc. 44), Non-Party Fotiadis's Motion to Quash Plaintiff's Deposition Subpoena and/or for a Protective Order (Doc. 45), and Plaintiff's Consolidated Motion to Compel Deposition of Dr. Chris Fotiadis, 30(b)(6) Deposition of Metrolina Nephrology Associates, P.A. and Production of Documents by Metrolina Nephrology Associates, P.A. (Doc. 50). Now being fully briefed,[1] these matters are ripe for consideration, and the Court finds the following.

I.   BACKGROUND

Plaintiff originally filed a complaint in 2016 naming Charlotte Mecklenburg Hospital Authority, d/b/a and n/k/a Atrium Health ("Atrium"), and Metrolina Nephrology Associates, P.A. ("MNA"). In Plaintiff's original complaint, he alleged causes of action against Atrium and MNA related to submission of false claims and statements to the government and civil conspiracy to

---

[1] Plaintiff belatedly filed a Motion for Leave to File Reply Out of Time and *Nunc Pro Tunc*, which is opposed. At the conclusion of this Order, the Motion for Leave to File Reply Out of Time and *Nunc Pro Tunc* (ECF Doc. 54) and the corresponding Motion for Leave to File Documents Under Seal (ECF Doc. 56) will be denied as moot.

commit violations under the False Claims Act ("FCA"), and a cause of action for violation of the Anti-Kickback Act. Plaintiff further alleged claims for retaliation in violation of the FCA and breach of contract against Atrium. In 2018, the United States elected not to intervene in the qui tam action and, after the election not to intervene, Plaintiff filed a voluntary dismissal of all claims except that of alleging retaliation in violation of 31 U.S.C. § 3730(h) of the FCA against Atrium. This discovery dispute later arose when, shortly prior to the expiration of the third discovery deadline extension, Plaintiff served a Rule 30(b)(6) deposition subpoena upon non-party MNA and also served a deposition subpoena upon non-party Dr. Fotiadis, an employee of MNA. MNA and Dr. Fotiadis timely filed non-party motions to quash. Subsequently, Plaintiff filed a motion to compel these depositions, as well as to compel the production of certain documents by MNA, which were subpoenaed on the same day as the depositions. Any additional relevant facts are set forth herein.

## II. DISCUSSION

A district court enjoys broad discretion in managing discovery. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). In general, the scope of discovery includes

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Relevance, on its own, does not impose a high bar. *Va. Dep't of Corr.*, 921 F.3d at 188. However, the proportionality requirements seek to avoid parties "taking unreasonable steps to ferret out every relevant document." *Id.* at 189. Moreover, if "discovery is sought from nonparties," the "scope must be limited even more." *Id.* Even if a nonparty has

information that falls within the ordinary scope of party discovery, they "should not be drawn into the parties' dispute without some good reason." *Id.*

A Rule 45 subpoena may command depositions or production of documents by non-parties, if issued in accordance with the relevant Federal Rules of Civil Procedure, but the proportionality analysis applies with a "more demanding variant." *Id.*; Fed. R. Civ. P. 45(a). The party issuing and servicing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction," which may include "reasonable attorney's fees," if a party or attorney fails to comply. Fed. R. Civ. P. 45(d)(1). "On timely motion, the court for the district where compliance is required must quash or modify a subpoena" if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iii)–(iv).[2] "[T]he ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Va. Dep't of Corr.*, 921 F.3d at 189.

Courts may also limit discovery or issue protective orders in accordance with Rule 26. Considerations including whether the discovery sought is unreasonably cumulative or duplicative, more easily obtained from another source, obtainable already during discovery, or outside the scope of discovery. *See* Fed. R. Civ. P. 26(b)(2)(C). Additionally, a protective order may be appropriate "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Beyond limiting discovery or issuing protective orders, courts may issue an order compelling discovery. *See* Fed. R. Civ. P. 37(a)(1) (discussing a party's right to move for the court to compel discovery); *Hicks v. Hous. Baptist Univ.*, No. 5:17-

---

[2] There are other times when a district court must quash or modify a subpoena, but such instances are not relevant to these motions. *Id.*

CV-629-FL, 2019 WL 7599887, at *3–5 (E.D.N.C. Nov. 12, 2019) (compelling a non-party to submit to a deposition subpoena *duces tecum* pursuant to Rule 37).

The main question presented in this case is whether Atrium retaliated against Plaintiff in violation of 31 U.S.C. § 3730(h). To establish a prima facie case of retaliation under 31 U.S.C. § 3730(h), an employee must "allege that (1) he engaged in a protected activity; (2) the employer knew about the activity; and (3) the employer retaliated against him in response." *Carlson v. DynCorp. Int'l LLC*, 657 F. App'x 168, 170 (4th Cir. 2016). The protected activity can be that supporting an FCA action against the employer alleging fraud or an effort to stop an FCA violation. *Id.* To establish that a plaintiff engaged in protected activity, the plaintiff should show either a "distinct possibility" of litigation or that his efforts were "motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA." *U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201 (4th Cir. 2018). The proper scope of discovery should be considered in light of these legal standards.

### A. Depositions[3]

Here, MNA and Dr. Fotiadis argue that the deposition subpoenas impose an undue burden where neither MNA nor Dr. Fotiadis are parties. Specifically, MNA and Dr. Fotiadis contend that the depositions likely could only pertain to whether Plaintiff engaged in a protected activity, as neither MNA nor Dr. Fotiadis were Plaintiff's employer and Plaintiff's complaint sets forth that he self-reported his allegedly protected activity to his employer. MNA and Dr. Fotiadis further argue that none of Plaintiff's allegations pertaining to whether he was engaging in protected

---

[3] As to Dr. Fotiadis and MNA's argument that Plaintiff's motion to compel depositions should be summarily denied due to failure to confer, the argument is largely irrelevant given that Plaintiff's arguments in his motion to compel the depositions almost entirely mirror the arguments set forth in his response in opposition to the motions to quash.

activity relate to them. Moreover, they contend that the subpoenas are unduly burdensome in that preparing for the depositions would be extremely time-consuming and costly.

Plaintiff argues these depositions are essential to support his case given MNA and Atrium's relationship. Plaintiff points out that MNA and Atrium have a longstanding referral relationship, MNA provides much post-kidney-transplant care for Atrium transplant patients, and several MNA doctors have titles within Atrium. Moreover, according to Plaintiff, when Atrium's Medicare kidney transplant system was at risk of termination, Atrium and MNA planned a team response for the government, included Dr. Fotiadis in the response priorities, and represented to the government that the post-transplant clinic would be consolidated into one location. Yet, the post-transplant clinic continued to mostly take place at MNA, and Plaintiff further alleges that MNA patients utilize an Atrium pharmacy long after they cease being Atrium patients. Based on these and similar arguments, Plaintiff maintains MNA and Dr. Fotiadis have relevant knowledge and the deposition subpoenas should not be quashed.

In considering these subpoenaed depositions, a simple showing of relevance is not enough, especially where they pertain to non-parties. *See Va. Dep't of Corr.*, 921 F.3d at 188. Rather, the Court must examine proportionality and weigh the burden upon the non-parties as compared to the benefit of the discovery to the deposing party. *Id.* In brief summary, the deposition topics for MNA include: (1) the contractual relationship between Atrium and MNA; (2) the referral of patients from MNA to Atrium; (3) the pre- and post-kidney transplant care arrangements between Atrium and MNA; (4) the billing arrangements between MNA and Atrium for post-transplant patients; (5) MNA's involvement in the adverse outcomes connected with the near termination of Atrium's Medicare kidney transplant program; (6) MNA's involvement in preparing the Mitigating Factors Request submitted by Atrium; (7) MNA's role in post-transplant care of Atrium

transplant patients; (8) discussions among or between MNA physicians or staff and others concerning consolidating post-transplant care into one location; (9) interactions between physicians or staff of MNA and Plaintiff during his employment as Director of Transplantation at Atrium; (10) the practice of MNA, or its physicians or staff, in providing prescriptions using the 340B pharmacy licensed by HRSA to Atrium; (11) MNA's involvement in providing data or cost information to Atrium for Atrium's Medicare Cost Reports; and (12) all documents being commanded to be produced by MNA pursuant to the Rule 45 Subpoena for Documents. ECF Doc. 50-2 at 5–6.

Many of the deposition topics, particularly Topics 1 through 7 and Topics 10 through 11, are not proportional to the needs of the case given that they are not highly relevant to Plaintiff's retaliation claim, cumulative, and discoverable through Atrium. Plaintiff has made no sufficient showing why his need to depose MNA on these topics outweighs the undue burden that the deposition would place on MNA. Topic 8 also appears to have minimal relevance to Plaintiff's claim. Moreover, the difficulty that would arise in preparing a Rule 30(b)(6) deponent on Topic 8 indicates that it is vastly disproportional to the needs of the case. Turning to Topic 9, while interactions between physicians or staff of MNA could be relevant to Plaintiff's retaliation claim if the interactions pertained to Plaintiff's concerns over FCA violations, this topic would impose a tremendous burden upon MNA to prepare a Rule 30(b)(6) deponent. Therefore, Topics 1–11 should be quashed. Topic 12, regarding any documents produced pursuant to the subpoenaed request for documents, is discussed below.

As to deposing Dr. Fotiadis, Plaintiff has made virtually no argument supporting his need to do so. The only specific references Plaintiff makes to Dr. Fotiadis are that, as a nephrologist at MNA, Dr. Fotiadis was involved in responding to the risk that Atrium's Medicare kidney

transplant program may be terminated, and he had knowledge of the relationship between Atrium and MNA. Plaintiff fails to demonstrate how this deposition fits within the proper scope of discovery relating to non-parties. Thus, for similar reasons to those outlined above, Dr. Fotiadis's deposition subpoena should be quashed.

### B. Requests for Production

Plaintiff's motion to compel raises redundant issues surrounding the deposition subpoenas, but new issues regarding the subpoena to MNA for the production of documents. Plaintiff makes little effort to delineate why his non-party subpoena for the production of documents does not impose an undue burden on MNA. Again, the Court must consider the relevance and proportionality of this subpoena in light of the heightened standards imposed when a non-party is being subpoenaed. *See Va. Dep't of Corr.*, 921 F.3d at 188.

Most of the requests for production are disproportional in that they were obtainable through Atrium, would be extremely expensive to produce, or are minimally relevant to Plaintiff's claim. However, the documents specified within the subparts of Request 8 may not be available through Atrium and could be very relevant to Plaintiff's retaliation claim. It is appropriate to compel the production of these documents, but the request should be limited as follows:

> All documents, notes, memoranda, minutes, emails or other communications or documents, and the like that concern, mention, reflect, relate to or were created in connection with or as a result of ~~any and all~~ meetings between MNA personnel (including but not limited to Dr. George M. Hart and/or Dr. Chris Fotiadis) and CMC/Atrium personnel (including but not limited to Dr. Hayes, Lisa McCanna, Joyce Korzen, Robin Surane, and/or and of the transplant surgeons at CMC/Atrium). These documents concerning such meetings are to include ~~but are not limited to~~:
> a. A meeting that took place sometime between 2010 and the end of 2013 between Dr. Hayes and Dr. George M. Hart in which they discussed: (i) the relationship between MNA and CMC/Atrium, (ii) Dr. Hayes' concerns about the post-transplant care of kidney transplant patients, and/or (iii) what would happen if changes were made to the relationship between MNA and

    CMC/Atrium as it pertained to the post-transplant care of kidney transplant patients;
b. A meeting that took place in or around October 2012 between Dr. Hayes, CMC management and MNA physicians, the purported purpose of which was "to clear the air" regarding any disagreements so "a united front" could be presented to CMS in the upcoming Mitigating Factors Request;
c. A meeting that took place on or around Friday, October 12, 2012, between Dr. George M. Hart, Dr. Chris Fotiadis and Dr. Hayes concerning the Mitigating Factors Request and the need for "a united front with CMS";
d. Meetings that took place in or around the summer of 2013 between Dr. Hayes, Joyce Korzen, Lisa McCanna and other CMC management and MNA physicians at which the consolidation of the post-transplant clinic and/or Dr. Hayes' concerns around this issue were discussed.

Notably, in an unsworn declaration, MNA maintains it is not aware of any documents in its possession, custody, or control responsive to this request. However, it is not disproportional to the needs of this case to ask MNA to confirm that it has no documents, copies, electronic duplicates or the like, as set forth in this request. Consequently, Topic 12 of the subpoenaed Rule 30(b)(6) deposition, which requests a deponent to testify as to any documents produced pursuant to the subpoena for the production of documents, is also not disproportional with regard to the documents produced pursuant to Request 8. If no documents are retained and, therefore, no documents are produced, then no deposition of MNA will occur. For the reasons set forth herein, Plaintiff's motion to compel will be granted in part and denied in part.

  **C. Attorney's Fees**

  Each of these motions contains a request for reasonable expenses and attorney's fees. Upon review of these matters, the Court concludes a grant of expenses and attorney's fees for these motions is not required, and the Court declines to grant expenses or attorney's fees for any of the motions addressed herein.

  **III. ORDER**

  For the reasons indicated herein, **IT IS THEREFORE ORDERED**:

1. Non-Party Metrolina Nephrology Associates, P.A.'s Motion to Quash Plaintiff's Rule 30(b)(6) Deposition Subpoena and/or for a Protective Order (Doc. 44) is **GRANTED IN PART AND DENIED IN PART** as set forth herein;

2. Non-Party Fotiadis's Motion to Quash Plaintiff's Deposition Subpoena and/or for a Protective Order (Doc. 45) is **GRANTED IN PART AND DENIED IN PART** as set forth herein;

3. Plaintiff's Consolidated Motion to Compel Deposition of Dr. Chris Fotiadis, 30(b)(6) Deposition of Metrolina Nephrology Associates, P.A. and Production of Documents by Metrolina Nephrology Associates, P.A. (Doc. 50) is **GRANTED IN PART AND DENIED IN PART** as set forth herein;

4. Plaintiff's Motion for Leave to File Reply Out of Time and *Nunc Pro Tunc* (ECF Doc. 54) and Plaintiff's Motion for Leave to File Document Under Seal (ECF Doc. 56) are **DENIED AS MOOT**;

5. The discovery set forth herein shall be completed as soon as practicable but no later than within thirty days, unless otherwise stipulated by the parties.

   **SO ORDERED**.

Signed: February 19, 2021

Graham C. Mullen
United States District Judge